UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

FRANK G.,

    Plaintiff,

v.                                      Case No. 5:17-cv-103

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## OPINION AND ORDER
### (Docs. 9, 10)

Plaintiff Frank G. brings this action under 42 U.S.C. § 405(g), requesting reversal of the decision of the Commissioner of Social Security denying his application for disability insurance benefits (DIB).[1] (Doc. 1; Doc. 9 at 1.) Currently pending is Plaintiff's motion to reverse the decision of the Commissioner (Doc. 9) and the Commissioner's motion to affirm (Doc. 10). For the reasons stated below, Plaintiff's motion is GRANTED, and the Commissioner's motion is DENIED.

## Background

Plaintiff was 50 years old on his alleged disability onset date of February 1, 2014. (AR 64.) He states that he is unable to work due to spinal stenosis and depression. (AR 187.)

Plaintiff has a GED level of education. (AR 36, 188.) He lives with his girlfriend and her mother. (AR 36.) He previously worked in bridge construction and as a loader operator. (AR 46, 188, 194.) He was laid off from his job as a loader operator at the end of 2013.

---

[1] The Complaint states that Plaintiff also unsuccessfully applied for Supplemental Security Income. (Doc. 1 at 1–2.) However, the record shows that Plaintiff only applied for DIB. (AR 172.)

In 2013, Plaintiff sought medical advice for low back pain that radiated into his legs, neck pain and stiffness, right shoulder pain, weakness in his arms and fingers, and headaches. (AR 44, 256.) He received discectomy and fusion surgery at C5-6 and C6-7 on February 6, 2014. (AR 274–75.) Plaintiff testified that the surgery did not help with his symptoms. (AR 45.) He testified that his headaches start at the back of his head and radiate over the top of his head, causing him to experience "a dull ache all day long." (*Id.*) When asked whether certain activities trigger or exacerbate these headaches, he replied, "If I try to pick something heavy up, you know, just picking stuff up, moving my neck all the time it makes my arms weak." (*Id.*) Plaintiff also testified that he suffers from back problems, including an inability to bend over or stand up straight. (*Id.*) He testified that he experiences pain in his lower back that radiates down his leg, occasionally resulting in a "sharp pain" in his knee that makes him fall, particularly on the stairs. (AR 45–46.) In a memorandum submitted to the administrative law judge before the hearing, Plaintiff alleged that "neck issues will limit him from frequent movements with his head." (AR 237.)

Plaintiff has not worked since his alleged onset date. However, he testified that he occasionally performs "odd jobs" at the place where he lives, such as laying floor tile, painting and putting down baseboard, in exchange for reduced rent. (AR 37–38.)

Plaintiff protectively filed an application for DIB on July 8, 2014. (AR 82–83.) His claim was denied initially on October 2, 2014 (AR 98), and on reconsideration on December 16, 2014 (AR 109). He requested a hearing on January 12, 2015. (AR 109.) Administrative Law Judge (ALJ) Matthew Levin conducted a hearing on June 21, 2016. (AR 57.) Vocational Expert (VE) Louie Laplant also testified. (AR 54–61.) ALJ Levin issued an unfavorable decision on

September 15, 2016. (AR 20–28.) The Appeals Council denied Plaintiff's request for review (AR 1), and he appealed to this court on May 15, 2017 (Doc. 1).

## ALJ Decision

Social Security Administration regulations set forth a five-step, sequential evaluation process to determine whether a claimant is disabled. *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). First, the Commissioner considers "whether the claimant is currently engaged in substantial gainful activity." *Id.* Second, if the claimant is not currently engaged in substantial gainful activity, then the Commissioner considers "whether the claimant has a severe impairment or combination of impairments." *Id.* Third, if the claimant does suffer from such an impairment, the inquiry is "whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments." *Id.* Fourth, if the claimant does not have a listed impairment, the Commissioner determines, "based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment." *Id.*

Finally, if the claimant is unable to perform past work, the Commissioner determines "whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see* 20 C.F.R. § 404.1520. The claimant bears the burden of proving his case at steps one through four. *McIntyre*, 758 F.3d at 150. At step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

Employing that sequential analysis in his May 12, 2016 decision, ALJ Matthew Levin first determined Plaintiff has not engaged in substantial gainful activity since February 1, 2014. (AR 22.) At step two, the ALJ found that Plaintiff has the following severe impairment:

degenerative changes of the spine, status post cervical fusion surgery. (*Id.*) The ALJ also found that Plaintiff has other non-severe impairments, including: chronic headaches, a rash on his hands, and depression. At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, meets or medically equals a listed impairment.

Next, the ALJ determined that Plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b)[2] with the following exceptions:

> [He] is limited from lifting/carrying more than 10 pounds frequently and [sic] occasionally. He must avoid all ladders/ropes/scaffold, but he can occasionally climb stairs. He has no limitations on balancing, kneeling and crouching, but he can only occasionally crawl and stoop. He is limited to no more than frequent bilateral overhead, forward and lateral reaching. He should avoid all hazards.

(AR 25.) At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (AR 26.)

At step five, the ALJ followed the Medical-Vocational Guidelines (the "Grid Rules") contained in 20 C.F.R. Part 404, Subpart P, Appendix 2. The ALJ found that Plaintiff was 50 years old when he allegedly became disabled and identified Plaintiff as "an individual closely approaching advanced age." (AR 26.) The ALJ found that Plaintiff has at least a high school education and is able to communicate in English and that "[t]ransferability of job skills is dispositive in this case." (*Id.*) After considering Plaintiff's age, education, work experience, and

---

[2] The regulations include the following definition of light work:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

RFC, the ALJ found that there are jobs in significant numbers in the national economy that Plaintiff could perform, including assembler of plastic hospital parts, ticket taker/seller, and toll collector. (AR 27.) The ALJ accordingly concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from February 1, 2014 through the date of the decision. (*Id.*)

## Standard of Review

The Social Security Act defines disability, in pertinent part, as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the Act, a claimant will only be found disabled if it is determined that his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

In considering the Commissioner's disability decision, the court conducts "'a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied.'" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (per curiam) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)); *see also* 42 U.S.C. § 405(g). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Poupore*, 566 F.3d at 305 (quoting *Consol. Edison Co. of N.Y. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229 (1938)). The "substantial evidence" standard is even more deferential than the "clearly

5

erroneous" standard; facts found by the ALJ can be rejected "only if a reasonable factfinder would *have to conclude otherwise.*" *Brault*, 683 F.3d at 448 (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)). The court is mindful that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

Plaintiff raises two arguments on appeal. First, he claims that substantial evidence does not support the ALJ's credibility determination. (Doc. 9 at 4.) Second, he contends that the ALJ failed to adequately accommodate all the limitations relating to his cervical spine impairment when determining his RFC.[3] (*Id.* at 8.) The Commissioner maintains that the ALJ's decision is supported by substantial evidence and complies with applicable legal standards. (Doc. 10 at 1.)

The court begins with Plaintiff's second argument. Plaintiff claims that the ALJ erred in assessing his RFC by failing to consider his allegations relating to his limited ability to move his head and neck. (Doc. 9 at 8.) As a result, Plaintiff contends that the RFC hypotheticals posed to the VE were not supported by substantial evidence, and therefore the VE's responses cannot support the ALJ's findings at step five. (*Id.* at 8–9.) "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as the facts of the hypothetical are based on substantial evidence, and accurately reflect the limitations and capabilities of the claimant involved." *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009) (summary order) (citation omitted). Accordingly, the court focuses on whether substantial evidence supports the ALJ's

---

[3] Although the record includes materials relating to Plaintiff's mental health, the court perceives Plaintiff's arguments on appeal to be focused on impairments stemming from his physical condition. The court has considered all of the evidence as part of its review, but focuses here on Plaintiff's physical functioning.

6

RFC determination. If it does not, the ALJ improperly relied on the VE's testimony. *Hofsommer v. Berryhill*, 322 F. Supp. 3d 519, 533 (S.D.N.Y. 2018).

The RFC is a "function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P, 1996 WL 374184 (July 2, 1996). "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8P. While "an explicit function-by-function analysis" is not required, the RFC determination must "afford[] an adequate basis for meaningful judicial review, appl[y] the proper legal standards, and [be] supported by substantial evidence such that additional analysis would be unnecessary or superfluous . . . ." *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013). "Remand may be appropriate, however, where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.*

As an initial matter, the court finds that head and neck movement is a relevant function in this case. The Commissioner argues that the ALJ was not "required to impose greater RFC limitations . . . in order to account for [Plaintiff's] cervical spinal impairment." (Doc. 10 at 7.) However, an "RFC does not represent the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8P; *see also* 20 C.F.R. § 404.1545(a). To the extent that the Commissioner claims the ALJ exhaustively addressed the functions relevant to Plaintiff's RFC, the court notes that non-exertional limitations restricting head and neck movement may significantly diminish an individual's work capacity. *See, e.g., Rowe v. Colvin*, 166 F. Supp. 3d 234, 239–40 (N.D.N.Y. 2016) (ALJ erred by failing to address medical opinion that claimant had

"marked limitations for . . . neck motion"); *Knighton v. Astrue*, 861 F. Supp. 2d 59, 70 (N.D.N.Y. 2012) (finding reversible error where the ALJ failed to address non-exertional limitations including "limited range of motion in [the claimant's] neck."); *cf. Cichocki*, 729 F.3d at 177 (noting that "the functions in paragraphs (b), (c), and (d) of 20 CFR §§ 404.1545 . . . are only illustrative of the functions potentially relevant to an RFC assessment").

Moreover, the VE's testimony established that head movement is relevant to all potential jobs that he testified someone with Plaintiff's RFC could perform. At the hearing, the ALJ presented the VE with a hypothetical individual who presented the same functional limitations the ALJ ultimately assessed for Plaintiff. (AR 58–59; *cf.* AR 24–25.) The VE testified that such an individual could work as an assembler of plastic hospital products, a ticket seller/taker, and a toll collector. (AR 59.) Plaintiff's counsel then asked how frequently these three jobs might require head movements. (AR 61.) The VE testified, "from observation I think it's fairly consistent. I think it would be frequent head movement. That's my opinion. I've seen it at least frequently." (*Id.*)

As the VE's testimony indicates, an individual restricted from frequent head movements could not perform any of the three jobs that the VE identified for the ALJ. Put another way, non-exertional limitations regarding Plaintiff's ability to move his head and neck could completely erode the occupational base of work that the VE testified he could perform. Plaintiff's functional capacity to perform head movements is therefore relevant to his RFC assessment. *Cf. Ellis v. Colvin*, 29 F. Supp. 3d 288, 301–02 (W.D.N.Y. 2014) (finding non-exertional limitation regarding use of hands relevant where attorney's questioning of VE showed that adding restriction on repetitive hand movements to ALJ's hypothetical "resulted in VE testifying that such an individual could not perform any of the jobs in question.").

When analyzing Plaintiff's RFC, however, the ALJ failed to adequately assess Plaintiff's ability to perform head and neck movements. (*See generally* AR 24–26.) While an ALJ need only discuss "*reported* symptom-related functional limitations;" SSR 96-8P (emphasis added); the record shows that Plaintiff reported functional limitations related to difficulties moving his head and neck. Plaintiff testified that "moving my neck all the time . . . makes my arms weak." (AR 45.) He also alleged in a memorandum submitted to the administrative law judge before the hearing that "neck issues will limit him from frequent movements with his head." (AR 237.) In a disability report dated October 22, 2014, he stated that a job requiring frequent "turning with [my] head increas[es] pain in my neck." (AR 217.) Plaintiff later indicated in a disability report dated May 11, 2015 that his condition had worsened since October 2014 because "my neck hurt[s] anytime I turn my head." (AR 219.)

Whenever symptoms are alleged, "the RFC assessment must . . . [c]ontain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and . . . [s]et forth a logical explanation of the effects of the symptoms . . . on the individual's ability to work." SSR 96–8P at *7; *see also* 20 C.F.R. § 404.1529(a) ("In determining whether you are disabled, we consider all your symptoms . . . .and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."). Accordingly, the ALJ was required to determine whether Plaintiff's alleged problems with head and neck movements gave rise to any functional limitations.

The Commissioner argues that the ALJ was not required "to expressly evaluate [additional] evidence relating to [Plaintiff's] cervical spinal impairment." (Doc. 10 at 7.) It is true that "[a]n ALJ need not recite every piece of evidence that contributed to the decision, so long as

9

the record 'permits us to glean the rationale of an ALJ's decision.'" *Cichocki*, 729 F.3d at 178 n.3 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)). When assessing a claimant's RFC, however, the ALJ must "specifically address limitations or conditions for which there is substantial record evidence." *Ellis v. Colvin*, 29 F. Supp. 3d 288, 300–01 (W.D.N.Y. 2014) (citing *Mason v. Barnhart,* 96 F. App'x 30, 31–32 (2d Cir. 2004)); *see also Sesa v. Colvin*, 629 F. App'x 30, 33 (2d Cir. 2015) ("Although we do not require an ALJ explicitly to reconcile every conflicting shred of medical evidence . . . affirmatively determining an issue requires some express discussion." (internal citations and quotation marks removed)).

In this case, there are numerous references in the medical records to Plaintiff's limited range of motion in his cervical spine and difficulty with head movements. Under the regulations, "objective medical evidence" includes "evidence of reduced joint motion, muscle spasm, [and] sensory deficit." 20 C.F.R. § 404.1529(c)(2)). Physician Assistant Vivian Calobrisi reported on October 21, 2013 that Plaintiff's symptoms of neck pain, neck stiffness, and shoulder pain "are exacerbated by turning the head to the right, turning the head to the left, neck extension, and neck movement." (AR 256.) On January 30, 2014, Dr. Scott Lollis evaluated Plaintiff for cervical spinal stenosis and noted that Plaintiff "gets paresthesias[4] in digits three through five when he puts his neck in a certain position." (AR 304.) He found that "[s]ensory testing reveals some hypesthesia[5] in digits three to five as noted above," and stated that "it is reasonable to suspect that his neck is playing a role in his symptoms." (AR 305.)

---

[4] Paresthesia is defined as a "spontaneous abnormal usually nonpainful sensation (e.g., burning, pricking)." *Stedman's Medical Dictionary* 653800 (28th ed. 2006) (Westlaw).
[5] Hypesthesia is defined as "[d]iminished sensitivity to stimulation." *Stedman's Medical Dictionary* 427260 (28th ed. 2006) (Westlaw).

The record indicates that Plaintiff's difficulties with head and neck movement continued after February 1, 2014, his alleged disability onset date. After examining Plaintiff's cervical spine on May 11, 2014, Dr. Robert Trembly noted that Plaintiff's "neck shows a somewhat impaired range of motion of [sic] with a lot of accompanying muscle spasm." (AR 249.) PA Calobrisi examined Plaintiff's cervical spine on June 11, 2015 and found a "[f]ull range of motions" but noted that the "[r]ange of motion decreased and [m]ovements painful." (AR 454.) On June 26, 2015, Dr. Trembly found that Plaintiff's "neck shows limited rotation and lateral bending" and noted that he was "able to reproduce pain by loading the facet joints or with flexion or extension." (AR 456.) Plaintiff's primary care physician Dr. Jessica Andrews performed a physical examination of Plaintiff on January 12, 2016 and found that his neck had a "very limited" range of movement. (AR 468.) Additionally, Plaintiff's physical therapy treatment notes indicates he was unable to "increase painfree cervical ROM [range of motion] to WNL [working normal levels]" by the time he ended physical therapy on May 6, 2016. (AR 506.) Thus, the record contains at least some minimal objective signs of Plaintiff's difficulty with head and neck movements.

However, nowhere did the ALJ properly consider the record evidence substantiating Plaintiff's alleged difficulty with head and neck movements. (*See generally* AR 22–24.) "An ALJ cannot recite only the evidence that supports his conclusion while ignoring contrary evidence." *Amy P. v. Comm'r of Soc. Sec.*, No. 2:17-CV-94, 2018 WL 2095345, at *6 (D. Vt. May 7, 2018) (quoting *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016)); *see also Kuleszo v. Barnhart*, 232 F. Supp. 2d 44, 57 (W.D.N.Y. 2002)) ("The ALJ's failure to acknowledge relevant evidence or to explain its implicit rejection is plain error." (quoting *Pagan v. Chater*, 923 F. Supp. 547, 556 (S.D.N.Y. 1996)). When summarizing the medical evidence at

step two,[6] the ALJ noted findings of tenderness in the cervical spine and referenced Dr. Trembly's findings regarding Plaintiff's limited range of motion in his cervical spine. (AR 23.) But merely mentioning this evidence in passing does not show that the ALJ properly considered limitations caused by Plaintiff's difficulty with head movements in determining his RFC. *See Southgate v. Colvin*, No. 2:14-CV-166, 2015 WL 6510412, at *6 (D. Vt. Oct. 28, 2015). And while the Commissioner stresses that "the ALJ noted numerous examination findings of normal strength, intact sensation and reflexes, normal gait, and negative straight leg raise testing" (Doc. 10 at 4 (citing AR 23)), these findings address muscle strength and reflexes, not head and neck mobility.

The ALJ did address Plaintiff's "alleged problems with weakness in his hands." (AR 25.) However, the ALJ summarized Plaintiff's testimony, in relevant part, as "when he picks up something heavy, it makes his arms weak." (*Id.*) The ALJ did not address Plaintiff's allegation that "*moving my neck all the time*, it makes my arms weak." (AR 45 (emphasis added).)

The court notes that the ALJ began his RFC analysis by stating that he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 96-4p." (AR 25.) However, "[s]uch boilerplate has been roundly condemned, and is no substitute for specific reasons for discrediting specific allegations of restrictions or limitations on one's ability to work." *Smith v. Comm'r of Soc. Sec.*, No. 2:10-CV-176, 2011 WL

---

[6] In this case, the ALJ unconventionally reviewed most of the medical evidence before assessing Plaintiff's RFC. "The Court is not prevented, however, from looking elsewhere in the ALJ's decision to determine what limitations the ALJ assessed [the claimant] as having." *King v. Colvin*, No. 2:14-CV-184, 2015 WL 5554987, at *5 (D. Vt. Sept. 21, 2015).

6372792, at *10 (D. Vt. Dec. 20, 2011) (citing SSR 96–7p, 1996 WL 374186 (July 2, 1996); SSR 96–8p; *Parker v. Astrue,* 597 F.3d 920, 921–22 (7th Cir. 2010)).

The Commissioner contends that the ALJ's RFC determination is supported by the medical opinions of State Agency reviewing physicians Dr. Geoffrey Knisely and Dr. John Hassinger, who both assessed Plaintiff's RFC after reviewing the available medical records. (Doc. 10 at 7.) In his RFC analysis, the ALJ afforded great weight to these opinions (AR 26), neither of which assessed limitations on Plaintiff's ability to move his head and neck (*see generally* AR 69–70, 90–92). The Commissioner emphasizes that "there is no RFC opinion of record to compete with those of Drs. Knisely and Hassinger, who extensively considered Plaintiff's cervical spinal impairment." (Doc. 10 at 7.)

The Commissioner essentially argues that because Dr. Knisely and Dr. Hassinger did not assess limitations on Plaintiff's ability to move his head and neck, their opinions are therefore consistent with the ALJ's RFC findings. However, the Second Circuit previously rejected a similar argument in *Rosa v. Callahan*, 168 F.3d 72, 81 (2d Cir. 1999). In *Rosa*, the Commissioner claimed "that the ALJ properly concluded that [the claimant] did not suffer from any impairments unlisted by either of the consulting physicians." *Id.* The *Rosa* court rejected this contention because "the two consulting physicians' reports did not 'corroborate' one another— each doctor identified certain physical limitations not identified by the other." *Id.* As a result, the court held that "there was simply no basis for the ALJ to conclude that either doctor intended to provide, or succeeded in providing, a full accounting of Plaintiff's physical impairments." *Rosa*, 168 F.3d at, 81.

Similarly, the record here reveals that Dr. Knisely's and Dr. Hassinger's opinions do not corroborate one another. For example, while Dr. Knisely found no manipulative or

13

environmental limitations (AR 79), Dr. Hassinger indicated that Plaintiff was limited to frequent bilateral, overhead, forward, and lateral reaching and should "[a]void concentrated exposure" to environmental hazards (AR 91–92.). *Cf. Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 200 (2d Cir. 2010) (opinions did not corroborate each other where one doctor "stated that plaintiff's abilities in bending, lifting, and carrying were 'slightly limited'" and the other "claimed that plaintiff's limitations were 'severe,' albeit 'not to the degree alleged.'"). Given the discrepancies between the two opinions, there was no basis for the ALJ to conclude that either doctor provided a complete account of Plaintiff's limitations. *See Rosa*, 168 F.3d at 81.

Moreover, to the extent that the Commissioner claims the reviewing physicians' opinions were consistent with a finding that Plaintiff could perform frequent head movements, the opinions "were consistent with this conclusion . . . only to the extent that they were silent on the issue." *Id.* As already noted, neither opinion addressed whether Plaintiff's cervical spine impairment limited his head and neck mobility. When evaluating Plaintiff's postural limitations, Dr. Knisely and Dr. Hassinger only assessed his ability to climb ramps, stairs, ladders, ropes, and scaffolds; balance; stoop (i.e. bend at the waist); kneel; crouch; and crawl. (AR 69–70, 91.) None of these functional assessments indicate how often and to what extent Plaintiff can move his head and neck. While there are no other medical opinions on the record assessing Plaintiff's functional limitations,[7] the absence of evidence indicating that Plaintiff can frequently move his head during an eight-hour workday does not constitute substantial support for the ALJ's RFC determination. *See Rodgers v. Colvin*, No. 16-CV-6739-CJS, 2018 WL 446220, at *3 (W.D.N.Y. Jan. 17, 2018) (where consultative examiner did not address relevant functional abilities, the ALJ

---

[7] Although the record includes a medical opinion from Dr. Jessica Andrews, Plaintiff's Primary Care Provider, she did not complete the provided questionnaire beyond describing Plaintiff's general medical information. (AR 489–92.)

14

could not assume there were no limitations); *Jermyn v. Colvin*, No. 13-CV-5093 (MKB), 2015 WL 1298997, at *20 (E.D.N.Y. Mar. 23, 2015) ("[T]he ALJ was not permitted to construe the silence in the record as to Plaintiff's functional capacity as indicating support for his determination as to Plaintiff's limitations."); *cf. Rosa*, 168 F.3d at 81 ("[T]he Commissioner was precluded from relying on the [consulting physicians'] omissions as the primary evidence supporting its denial of benefits."). Therefore, the ALJ could not properly conclude that Plaintiff's only limitations were those identified in the reviewing doctors' opinions.

For the reasons discussed above, the court concludes that the ALJ erred by failing to assess Plaintiff's RFC in light of his alleged limitations with head and neck movements, and consequently the VE's testimony cannot support the ALJ's decision to deny disability benefits. *See Calabrese*, 358 F. App'x at 276; *Hofsommer*, 322 F. Supp. at 535. Neither the decision nor the record show that the ALJ specifically addressed Plaintiff's alleged problems with head and neck movements in his RFC assessment. As a result, the court cannot be certain the ALJ applied the correct legal principles. The Second Circuit recognizes that where the court is "unable to fathom the ALJ's rationale in relation to evidence in the record, especially where credibility determinations and inference drawing is required of the ALJ," it is appropriate to remand the case "for further findings or a clearer explanation for the decision." *Cichocki*, 729 F.3d at 177 (quoting *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982)).

The court therefore finds remand is necessary. Accordingly, the court does not reach Plaintiff's other arguments. Although the court is not addressing Plaintiff's arguments concerning the ALJ's credibility assessment (or subjective symptom evaluation)[8] or

---

[8] The regulations and sub-regulatory policy no longer use the term "credibility," since "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016).

consideration of the opinion evidence, the ALJ may reconsider those issues on remand, and should consider whether the evidence of record regarding Plaintiff's ability to move his head and neck warrants including additional non-exertional limitations in the RFC assessment. "In analyzing the record on remand, the ALJ remains free . . . to develop the administrative record to the extent necessary to make this and any other determinations on the extent and causes of [Plaintiff's] symptoms." *Padula v. Astrue*, 514 F. App'x 49, 51 (2d Cir. 2013) (citing *Perez v. Chater,* 77 F.3d 41, 47 (2d Cir. 1996)).

## Conclusion

Plaintiff's Motion to Reverse the Decision of the Commissioner (Doc. 9) is GRANTED, and the Commissioner's Motion for Order Affirming the Commissioner's Decision (Doc. 10) is DENIED. The case is REMANDED for further proceedings and a new decision.

Dated at Rutland, in the District of Vermont, this 4 day of February, 2019.

Geoffrey W. Crawford, Chief Judge
United States District Court